IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | : |
| | :    CRIMINAL ACTION |
| v. | : |
| | :    No. 10-524 |
| SHACOY MCNISH | : |

MEMORANDUM

Schiller, J.                                                                                                        September 22, 2020

Before the Court is Defendant Shacoy McNish's motion for compassionate release. For the reasons that follow, the motion is granted.

I.   FACTUAL BACKGROUND

In 2009, McNish was involved in a conspiracy to steal the identity of others and to defraud them. He wrongfully obtained personal identifying information of numerous people and made thousands of dollars of unauthorized purchases at stores such as Sears, Home Depot, Radio Shack, and Target. He also stole money from victims' bank accounts by pretending to be bank customers and using fake identifications.

In 2010, McNish participated in another identity-theft conspiracy. He enticed other co-conspirators to make unauthorized purchases on credit cards. He also set up credit card accounts using information he stole from a Philadelphia real estate development company.

McNish also tried to make a straw purchase of a gun in May of 2010. He paid a relative $600 to buy a gun for him using a fake identification. As a convicted felon, McNish could not legally purchase a gun on his own.

Ultimately, McNish was convicted of aggravated identity theft, conspiracy, bank and credit card fraud, possession and uttering of counterfeit checks, and offenses related to the attempted straw purchase of a gun. He was sentenced to 156 months in jail, a sentence which McNish is

serving at Fort Dix FCI. The Court also sentenced McNish to a period of five years of supervised release. He has an anticipated release date of August 29, 2022, but he is eligible to be released to a half-way house in August of 2021.

## II. DISCUSSION

### A. Compassionate Release Statute

McNish moves this Court to reduce his sentence and grant compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

A district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(ii). Finally, prior to granting a compassionate release, a district court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate deterrence to criminal conduct. *Id.* § 3553(a)(2)(A-B). Additional factors include the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training, medical care, and other treatment. *Id.* § 3553(a)(2)(C-D).

Although Congress has not defined the term "extraordinary and compelling reasons," the Sentencing Commission has enumerated four reasons that qualify as "extraordinary and compelling":

(A) Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is —
- (I) suffering from a serious physical or medical condition,
- (II) suffering from a serious functional or cognitive impairment, or
- (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
- (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
- (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

### B.    The Pandemic and the Situation at Fort Dix

The Court will not write at length about the havoc wreaked by COVID-19 in the United States. The virus, coupled with the abysmal response to it throughout much of this country, has led to the death of over 200,000 people (and counting) in the United States. While the virus can be dangerous for anyone, people with certain underlying medical conditions and older adults are at

3

increased risk of severe illness or death from COVID-19. *People Who Are At Increased Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 16, 2020). Prisons have been hit particularly hard by the pandemic, as they present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1, 8-9 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.").

According to the Government's response, thirty-nine inmates at Fort Dix have tested positive for COVID-19. McNish counters that, given the large population at Fort Dix and the lack of testing at the facility, the BOP case count fails to accurately portray the crisis at the prison. Indeed, as McNish notes, the numbers at Fort Dix may be underreported and a number of prisoners have been compassionately released from Fort Dix. (Def.'s Mem. of Law in Supp. of His Mot. for Compassionate Release at 7-10.) The Government points out that even with greater testing, that only paints a picture of the COVID-19 situation at a particular point in time. (Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3852(c)(1)(a)(i) [Gov't's Opp'n] at 19.) Supposedly, the Government argues, because Fort Dix has not seen a significant outbreak of symptomatic individuals, it can be assumed that the preventative measures at the prison have been effective.

Perhaps there are relatively few symptomatic or confirmed cases of the virus at Fort Dix FCI. The Court does not subscribe to this line of thinking. It suggests that ignorance is the best policy: Fort Dix only needs to be concerned when confirmed cases increase. That strikes the Court as a risky deal-with-it-only-if-forced-to strategy. A successful strategy for dealing with the virus in prisons must prevent this deadly scourge from infecting individuals and not simply treat infected

individuals. And one cannot know the full extent of the problem if most of the individuals at Fort Dix FCI remain untested.

C. **Extraordinary and Compelling Reasons**

The Government acknowledges that a chronic kidney condition, such as the one from which McNish claims to suffer, qualifies as "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." (*See* Gov't's Opp'n at 24 ("Here, the defendant's condition of chronic kidney disease meets that test. The CDC has advised that any stage of chronic kidney disease presents a risk for an adverse outcome if a person contracts COVID-19.").) Nonetheless, the Government contends that McNish's medical conditions are under control at Fort Dix. (*Id.* at 24-25.)

Regardless of whether McNish's medical conditions are under control at his current location, the confirmed presence of COVID-19 at Fort Dix, despite the BOP's procedures to prevent transmission, underscores the ongoing risk to inmates of contracting the virus. And the Court is not merely concerned with the ability of Fort Dix to treat McNish if he becomes infected with the virus. More importantly, "[t]here currently are no cures, vaccines, or accepted treatments for COVID-19, and the only effective way to protect vulnerable people from injury or death from COVID-19 is to prevent individuals from being infected with the COVID-19 virus." *Pimentel-Estrada v. Barr*, Civ. A. No. 20-495, 2020 WL 2092430, at *3 (W.D. Wash. Apr. 28, 2020) (internal quotation marks omitted). Additionally, courts have determined that chronic kidney disease can present an "extraordinary and compelling" reason for compassionate release. *See, e.g., United States v. Davidson*, Crim. A. No. 16-139, 2020 WL 4877255, at *19-20 (W.D. Pa. Aug.

20, 2020); *see also United States v. Iezzi*, Crim. A. No. 17-157, 2020 WL 4726582, at *8 (W.D. Pa. Aug. 14, 2020).

Fort Dix is a heavily populated correctional institution that has seen a number of COVID-19 cases. Even with certain precautions taken at the prison, the virus finds a way to infect and to spread. It has appeared at Fort Dix and presents a risk to the prison population there, including McNish.

The Government's recognition that McNish's chronic kidney condition is "a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care" at Fort Dix, coupled with confirmed presence of the virus at Fort Dix leads the Court to conclude that an extraordinary and compelling reason justifies his immediate release from incarceration.

### D.     Consistency with Sentencing Considerations

Although McNish has demonstrated an "extraordinary and compelling" reason for his compassionate release exists, the Court must decide whether release is appropriate in light of the Section 3553(a) factors. The relevant factors the Court must consider include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). This determination is left to the discretion of the district court. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Court may consider the amount of time left on a defendant's sentence in deciding a motion for compassionate release. *Pawlowski*, 967 F.3d at 331. This is so because the length of time the defendant has already served is highly relevant to whether a reduced sentence will still sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.*; 18 U.S.C. § 3553(a)(2,6). When a defendant is already due to be released from prison in a short time, the efficacy of the court's ability to protect the public from further crimes of the defendant by denying compassionate release is significantly tempered. *See United States v. Early*, No. 09-CR-282, 2020 WL 2112371, at *4 (N.D. Ill. May 4, 2020).

The Court finds that, upon weighing the extraordinary and compelling reasons for McNish's reduction of sentence against the sentencing considerations set forth in Section 3553(a), he is entitled to compassionate release.

The Government contends that McNish is not entitled to compassionate release because he continues to present a danger to the community. (Gov't's Opp'n at 24-25.) McNish counters that he does not present a danger to the community. Rather, he has "shown significant rehabilitation." (McNish's Reply in Further Support of His Mot. for Compassionate Release at 3.) For instance, he made significant progress in a residential drug abuse program, though he was not permitted to finish that program. During his drug treatment program, McNish was a mentor and a senior guide. (McNish's Reply at 3.)

Without question, McNish's crimes were serious and they were not victimless, a fact that McNish realizes given the declaration that he has included with his motion. Identity theft harms individuals, destroys lives, and is a scourge on society in general. But the Court does not believe

7

that McNish is presently a danger to the community. These crimes took place approximately a decade ago, and he is set to be released in a relatively short period of time. Moreover, McNish's most recent record in prison is without incident, and he is housed in a low-security facility. The Court believes that the amount of time McNish has served in prison reflects the seriousness of his crime and has promoted respect for the law and provided a just punishment. Accordingly, the sentencing factors weigh in favor of McNish's compassionate release.

### III. CONCLUSION

For the foregoing reasons, Shacoy McNish's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A)(i) is granted. However, the Government notes that in modifying a term of supervised release, a court may impose a period of home confinement as a condition of supervised release. (Gov't's Opp'n at 29 n.6) McNish has not addressed this specific argument. The Court finds that under the circumstances, supervised release with a period of home confinement for McNish will serve as a reasonable substitute for imprisonment. An Order consistent with this Memorandum will be docketed separately.